UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DONALD GILBERT and | : | CIVIL CASE NO. |
| ANDRE GILBERT, | : | 3:13-CV-1715 (JCH) |
|     Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| ROGER NEWTON and | : | |
| THE CITY OF NEW LONDON, | : | JUNE 15, 2015 |
|     Defendants. | : | |

**RULING RE: DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT (Doc. Nos. 44, 46)**

**I.   INTRODUCTION**

Plaintiffs Donald and Andre Gilbert brought this action in state court under section 1983 of title 41 of the United States Code alleging that defendant Roger Newton, a police officer of the New London Police Department, violated their constitutional rights by pulling over their car without justification, ordering them to exit the vehicle, assaultively frisking them, and arresting Donald after he shouted out in pain during the pat-down search.  The defendants removed the action to federal court.  See Notice of Removal (Doc. No. 1).  After discovery, the defendants filed separate Motions for Summary Judgment (Doc. Nos. 44, 46).

For the following reasons, the court denies New London's Motion, and it grants in part and denies in part Newton's Motion.

**II.   BACKGROUND**

The court takes the following undisputed facts from the parties' Local Rule 56(a) Statements.  New London's Local Rule 56(a)1 Statement (Doc. No. 46-2); Newton's

1

Local Rule 56(a)1 Statement (Doc. No. 44-2); Pls.' Local Rule 56(a)2 Statement (Doc. No. 46-2).[1]

At all times relevant to this lawsuit, Newton was a police officer with the New London Police Department acting within the scope of his employment.  See Pls.' Local Rule 56(a)2 Statement ¶ 2.[2]  Sometime after 4:00 p.m. on October 25, 2011, Donald Gilbert was operating a vehicle in which Andre Gilbert was a passenger.  Id. ¶ 4.

Newton pulled the Gilberts over and asked Donald to step out of the vehicle and to stand behind the vehicle with his hands on the trunk.  See id. ¶ 5.  Newton conducted a pat-down search of Donald as he stood behind the vehicle.  See id. ¶ 6.  Donald shouted and partially turned around during Newton's pat-down search, allegedly because Newton inappropriately touched his genitals and buttocks.  See id. ¶¶ 6, 8.  Newton arrested Donald for interfering with a police officer in violation of Section 53a-167a of the Connecticut General Statutes.  Id. ¶ 9.  Newton then instructed Andre to exit the vehicle and conducted a pat-down search of him.  See id. ¶ 5.  Andre alleges that Newton similarly touched his buttocks and genitals.  See id. ¶ 6.  Andre was released without being arrested.  Id. ¶ 7.  After Newton arrested Donald, he searched the Gilbert's vehicle with a police dog, but he found no contraband.  See id. ¶ 10.

Donald alleges that he was criminally prosecuted on the charge of interfering with an officer.  Id. ¶ 11.  The charge was nolled a few months later.  Id. ¶ 11.

---

[1] The Gilberts did not file a Local Rule 56(a)2 Statement in opposition to Newton's Local Rule 56(a)(1) Statement.  However, they did submit such a Statement in opposition to New London's Local Rule 56(a)(1) Statement.  Because New London and Newton assert essentially the same facts in their local rule statements, the court treats the Gilberts' single Local Rule 56(a)2 Statement as a response to both defendants' submissions.

[2] The court cites to the Gilberts' Local Rule Statement for both their response to the defendant's underlying assertions as well as the underlying assertion itself.

The Gilberts admit that, at this point, they have no factual evidence that Newton stopped them on the basis of their race. Id. ¶ 12. Neither Gilbert sought medical attention for his alleged injuries arising out of the stop. Id. ¶ 13.

## III. STANDARD

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." In Re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009). "[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009). Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)).

## IV. DISCUSSION

The defendants each filed a separate a Motion for Summary Judgment. Because the Motions present different issues, the court will address each Motion separately.

A.     Officer Newton

The Gilberts make the following claims against Newton: (1) violation of the Fourth Amendment's right against unreasonable searches and seizures; (2) false arrest under the federal constitution; (3) common law false arrest; (4) malicious prosecution; (5) violation of the Connecticut constitution; and (6) racial profiling.  Newton's Motion seeks summary judgment on the racial profiling and Connecticut constitutional claims as to both Gilberts and on the malicious prosecution claim as to Andre Gilbert only.  Andre concedes that his malicious prosecution claim has no basis and agrees to withdraw it.  See Pls.' Mem. Opp. Newton Mot. (Doc. No. 52) at 15.  Therefore, the court will only address the arguments regarding the Connecticut constitutional and racial profiling claims.

1.     Claims under the Connecticut Constitution

The Gilberts assert that Newton's pat-down search violated their rights under article first, sections 7 and 9 of the Connecticut Constitution ("sections 7 and 9") and that they are entitled to damages according to the Connecticut Supreme Court's opinion in Binette v. Sabo, 244 Conn. 23 (1998).  Newton argues that only egregious violations of the Connecticut Constitution are compensable under Binette and that his conduct in this case was not egregious.

In Binette, the Connecticut Supreme Court held that violations of sections 7 and 9 could give rise to money damages.  See id. at 33.  Courts in this District have diverged on the issue of whether Binette created a cause of action for every violation of sections 7 and 9 or only for those violations that are sufficiently egregious.  See Waller v. City of Middletown, No. 3:11-CV-01322 CSH, 2014 WL 4843681, at *15 (D. Conn.

Sept. 29, 2014) (discussing the issue), order vacated in part on other grounds on reconsideration, No. 3:11-CV-01322 CSH, 2015 WL 778749 (D. Conn. Feb. 24, 2015).

After careful consideration, the court concludes that a violation of sections 7 and 9 gives rise to a cause of action even if it is not the result of egregious conduct.  As the following discussion illustrates, the court reaches this conclusion for substantially the same reasons that Judge Haight gave in Waller:  such a conclusion is supported by a careful reading of the language in Binette and it is consistent with Binette's underlying rationale.  See Waller, 2014 WL 4843681, at *15–*20.

Binette was careful to emphasize that, despite the Court's recognition of a cause of action for violations of sections 7 and 9, a constitutional cause of action does not necessarily exist for every violation of the state constitution.  See Binette, 422 Conn. at 47.  However, the Court went on to state that "[w]hether to recognize a cause for action for alleged violations of other state constitutional provisions in the future must be determined on a case-by-case basis." Id. at 47 (emphasis added).  In its list of factors for making such case-by-case determinations, it included "the nature of the constitutional provision at issue." Id.  This language makes clear that, instead of limiting actions based on violations of sections 7 and 9, the Supreme Court was cautioning against expanding Bivens-type causes of actions to other constitutional provisions.  See Yorzinski v. Alves, 477 F. Supp. 2d 461, 470–71 (D. Conn. 2007).

Further, limiting causes of action to egregious violations would be inconsistent with Binette's underlying rationales:  neither Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 389 (1971), nor common-law antecedents of the state constitution's prohibitions of unreasonable searches and seizures imposed

5

such a requirement of egregiousness.  See Waller, 2014 WL 4843681, at *20.

Moreover, while Bivens actions have no egregiousness requirement, the United States

Supreme Court has been careful not to expand Bivens-type actions far beyond the

Fourth Amendment.  See Mirmehdi v. United States, 689 F.3d 975, 980 (9th Cir. 2012)

("In the years since Bivens, the Supreme Court has repeatedly rejected Bivens claims

outside the context discussed in that specific case . . . ." (internal alterations and

quotation marks omitted)); Mehrkens v. Blank, 556 F.3d 865, 870 (8th Cir. 2009) ("We

note the Supreme Court has applied Bivens sparingly outside of the Fourth Amendment

context and never in the context of a complex statutory remedial scheme.").  Thus, the

Connecticut Supreme Court's cautionary words about expanding Binette causes of

action outside of sections 7 and 9 is consistent with the United States Supreme Court's

hesitance to extend Bivens-type actions outside of the Fourth Amendment context.

    Finally, nothing in sections 7 or 9 suggest that they would provide a lower level of

protection than the Fourth Amendment to the United States Constitution.  To the

contrary, the federal constitution is typically understood to establish a "minimum national

standard for the exercise of individual rights."  E.g., State v. Ledbetter, 275 Conn. 534,

560 (2005).  Consistent with this understanding, the Connecticut Supreme Court has

determined that, "in certain respects, article first, § 7, of the state constitution affords

greater protection than the fourth amendment to the United States constitution."  State

v. Davis, 283 Conn. 280, 305 (2007).

    Cases in this District ruling that violations of sections 7 and 9 must be egregious

in order to give rise to a cause of action have given two reasons for imposing such a

requirement.  First, in Binette, the Connecticut Supreme Court was careful to qualify its

6

ruling, "emphasiz[ing] that [its] decision to recognize a Bivens-type remedy in [that] case [did] not mean that a constitutional cause of action exists for every violation" of the state constitution. Binette, 244 Conn. at 47. Indeed, the Connecticut Supreme Court subsequently decided not to recognize a cause of action under section 8 of article first, explaining that, in Binette, it had "declined to create an all-encompassing damages action for any and all alleged violations of state constitutional provisions." ATC P'ship v. Town of Windham, 251 Conn. 597, 613 (1999). The Court reiterated that "whether such a cause of action should be recognized [should] be determined on a case-by-case basis." Id. The second reason some cases in this district have given for imposing an egregiousness requirement is that the Connecticut Appellate Court has imposed such a requirement. See Martin v. Brady, 64 Conn. App. 433, 441 (2001) ("We are not persuaded that these allegations, if true, rise to the level of egregious misconduct. They are a far remove from the allegations of misconduct that underlay Binette."), aff'd on other grounds, 261 Conn. 372 (2002).

The first reason – that Binette was careful not to create a cause of action for every violation of the constitution – ignores the Court's instruction that only violations of other state constitutional provisions, i.e., those other than sections 7 and 9, require case-by-case analysis.

The existence of the Connecticut Appellate Court's opinion in Martin is more problematic but not insurmountable. The Second Circuit has explained that federal courts are bound to apply the law as interpreted by a state intermediate appellate court unless there is persuasive evidence that the highest court of the state would reach a different conclusion. Pahuta v. Massey-Ferguson, Inc., 170 F.3d 125, 134 (2d Cir.

7

1999); see also Roginsky v. Richardson-Merrell, Inc., 378 F.2d 832, 851 (2d Cir. 1967) ("[W]hen a federal court must determine state law, it should not slavishly follow lower or even upper court decisions but ought to consider all the data the highest court of the state would use."). The reasons given in Waller and recounted above are persuasive evidence that the Connecticut Supreme Court would disagree with the conclusion reached in Martin and rule that all violations of sections 7 and 9 give rise to a private cause of action, whether the offending conduct is egregious or merely unreasonable. The court acknowledges Newton's argument that this may create a forum shopping issue. However, this risk is inherent in a rule that allows federal courts to disregard state appellate courts in certain circumstances. Further, the forum shopping risk is minimized by the fact that there is persuasive argument that a case brought in state court would ultimately resolve in the same way at the conclusion of the full appeal process.

Therefore, the court denies Newton's Motion for Summary Judgment on Counts Three and Seven.

    2.  Racial Profiling Claims

The Gilberts claim that Newton engaged in racial profiling by pulling their vehicle over based on their race. Such a claim is best analyzed as a violation of the Equal Protection Clause. See Simmons v. Love, No. 3-09-CV-1218 (WWE), 2012 WL 113665, at *5 (D. Conn. Jan. 12, 2012) ("Constitutional claims alleging racial profiling are subject to the analysis of the Fourteenth Amendment Equal Protection Clause."). "To state a race-based claim under the Equal Protection Clause, a plaintiff must allege that a government actor intentionally discriminated against him on the basis of his race."

Brown v. City of Oneonta, New York, 221 F.3d 329, 337 (2d Cir. 2000); see also McCleskey v. Kemp, 481 U.S. 279, 292 (1987) ("[T]o prevail under the Equal Protection Clause, [a plaintiff] must prove that the decisionmakers in *his* case acted with discriminatory purpose." (emphasis in original)).  Discrimination can be proved with direct evidence or with inferences drawn from statistical evidence or other circumstantial evidence.  See United States v. Avery, 137 F.3d 343, 355 (6th Cir. 1997).

The Gilberts admit that they have no direct evidence of racial discrimination.  See Pls.' Local Rule 56(a)2 Statement ¶ 12.  Instead, they provide a report issued by the Connecticut Racial Profiling Prohibition Project, which includes traffic stop data.  See Pls.' Mem. Opp. Newton Mot., Ex. B.  The report states that New London was one of two agencies that did not comply with the traffic stop reporting requirements.  The Gilbert's concede that they "do not presently have specific statistical data to show that the New London Police Department engage [sic] in racial profiling . . . or that the specific defendant former officer himself engaged in racial profiling."  Pls.' Mem. Opp. Newton Mot. 12 (emphasis in original).  Instead, the Gilberts ask the court not to rule on this part of Newton's Motion for Summary Judgment until New London complies with the reporting requirements and statistical information becomes available.  See id. at 12–13.

The court denies the Gilberts' request.  Discovery in this case was due on November 15, 2014.  Scheduling Order (Doc. No. 24).  Plaintiffs alleging intentional discrimination can succeed with the usual discovery tools and without the benefit of a report composed by an external party.  Therefore, because the Gilberts concede they have no direct or other evidence of racial profiling, the court grants Newton's Motion for Summary Judgment on these claims, which are made in Counts One and Five.

9

B.   The City of New London

The Gilberts assert claims against the City of New London in Counts Four and Eight of their Complaint. These Counts allege that Newton's traffic stop, pat-down search, and arrest of Donald were the result of New London's policy, practice, or custom to allow such conduct to occur. See Compl. (Doc. No. 1-1), Counts 4, 8. Specifically, the Gilberts assert that New London had the policy, practice, or custom of: arbitrary motor vehicle stops; arbitrary detentions of person; arbitrary stops and investigations of motorists and pedestrians done without reasonable cause or suspicion; arbitrary arrests of persons; and inadequate officer training. See id. New London argues that the Gilberts have not come forward with sufficient evidence to create a genuine issue of material fact that it had such a policy, practice, or custom or that it was deliberately indifferent to the constitutional rights of persons with whom its police officers interacted. See New London's Mem. Supp. (Doc. No. 46-1) at 5.

Municipalities are subject to liability under section 1983 if the plaintiff shows that the illegal acts of its employee were the result of its policy, custom, or practice. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690, 694–95 (1978). Such a municipal policy need not be pronounced: a tacit policy can be inferred from the municipality's action or inaction. See Cash v. Cnty. of Erie, 654 F.3d 324, 334 (2d Cir. 2011). "[W]here a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom that is actionable under § 1983." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 126 (2d Cir. 2004) (Sotomayor, J.) (internal quotation marks omitted).

Deliberate indifference is a stringent standard, and a municipality's mere negligence will not give rise to liability under Monell.  E.g., Cash, 654 F.3d at 334.  To establish such deliberate indifference, a plaintiff must show that there was an obvious need for better supervision to protect against the sort of constitutional violations to which it had been alerted.  See Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995).  Such a need can be shown, for example, with proof of repeated complaints of civil rights violations.  See id.  Thus, deliberate indifference may be inferred if a municipality makes no meaningful attempt "to investigate or to forestall further incidents."  Id.

The Gilberts seek to show New London's deliberate indifference by showing that New London received multiple complaints of similar civil rights violations and took no material investigative or corrective action.  The court briefly summarizes these complaints.

First, Donald Gilbert explains in his Affidavit that, in addition to the incident giving rise to this suit, Newton had stopped and searched him without reason on May 30, 2010.  Pls.' Mem. Opp. New London Mot., Ex. A (Doc. No. 55-2).  Donald submitted a voluntary statement on the same day, complaining that Newton inappropriately touched him in the same manner as is alleged in this suit.  Id.

Next, the Gilberts have provided a Citizen's Complaint filed by Jeremy Kelly.  Id., Ex. D (Doc. No. 55-5).  In it, Mr. Kelly complains of an occasion in which Newton followed his car for no reason, pulled him over, and then arrested him for marijuana possession and breach of peace.  During the same underlying incident, Newton also arrested Jeremy's brother, Jason Kelly, who was a passenger in the car, for breach of peace and interfering with an officer.  The New London Police Department

Memorandum discussing the incident notes that the Kellys claimed that evidence had been planted in their car at least once. Id., Ex. F (Doc. No. 55-7).

The Gilberts also provide a New London Police Department Memorandum discussing a complaint by Ishma Harris that Newton was harassing her. Id., Ex. J (Doc. No. 55-11). Harris states that Newton pulled her car over, saying he smelled marijuana, and proceeded to search her car without permission. No marijuana was found. In the memorandum, the Deputy Chief of Police notes that Harris's car has been "utilized by drug dealers to transport narcotics," and he states that the "enforcement of seemingly minor vehicle offenses is a proven tool in the efforts to curb crime and rug [sic] trafficking." Id.

The Gilberts further produced a Citizen's Complaint filed by Michael Brown. Id., Ex. L (Doc. No. 55-13). Brown complains that, after Newton pulled him over for a traffic violation, Newton conducted an aggressive and inappropriate pat-down search, similar to those alleged in this case. See id. A New London police officer reported that Brown withdrew this complaint. See id., Ex. M. (Doc. No. 55-14).

The last incident specifically related to Newton was the subject of a lawsuit in Goode v. Newton, No. 3:12-cv-00754 (DJS) (D. Conn. filed May 18, 2012). Lance Goode alleged that Newton pulled over his car without reason and proceeded to conduct an inappropriate pat-down search. See Pls.' Mem. Opp. New London Mot., Ex. N (Doc. No. 55-15). Goode also alleges that, on other occasions, Newton pulled over Goode's car without reasonable suspicion, manufactured evidence of drugs, and arrested him. See Goode's Mem. Law Opp. Newton Mot. Summ. J., Goode v. Newton,

No. 3:12-cv-00754 (DJS), Doc. No. 104 (submitting evidence in support of those claims).[3]

Finally, the Gilberts refer to the conduct of other New London police officers to establish that the City has a policy or practice. Specifically, they provide an Affidavit of Francisco Francovilla. Francovilla states that, after the police pulled him over for a traffic violation, the officers conducted an aggressive pat-down search, similar to the one alleged in this case. See id., Ex. P (Doc. No. 55-17). Francovilla's allegations were also the subject of another lawsuit, Francovilla v. Bruno, No. 3:11-cv-1216 (SRU) (D. Conn. filed Aug. 3, 2011).

From this evidence, a reasonable jury could find that New London was deliberately indifferent to its officers' practice of making traffic stops without reasonable suspicion of any wrongdoing, following such traffic stops with overzealous (to put it gently) pat-down searches, and searching citizens' cars without a legal basis for doing so.

New London attempts to explain why each of these incidents is either insufficient or should not be considered. It essentially argues that the stops and searches were supported by probable cause or reasonable suspicion. See New London's Reply (Doc. No. 61) at 1–9. It also points out that Brown withdrew his complaint, that there is no evidence of Goode's accusations prior to October 25, 2011, and that there were factual disputes regarding Francovilla's complaints. These arguments do not justify simply

---

[3] The Gilberts support this claim with a citation to Exhibit O, which is attached to their Memorandum in this case. However, Exhibit O does not appear to contain the relevant portions of Goode's deposition testimony. Relevant portions are attached, however, to the cited Opposition in Goode's case.

ignoring these incidents. To the contrary, they go to show that there are genuine factual disputes regarding whether New London had a policy, practice, or custom of, or deliberate indifference to, officers conducting pretextual traffic stops, aggressive pat-down, and unjustified car searches. Accordingly, summary judgment would be inappropriate under Federal Rule of Civil Procedure 56 and the defendant City's Motion for Summary Judgment is denied.

## V.   CONCLUSION

For the foregoing reasons, the court **GRANTS** in part and **DENIES** in part Newton's Motion for Summary Judgment (Doc. No. 44), and it **DENIES** New London's Motion for Summary Judgment (Doc. No. 46). The court grants Newton's Motion as to the racial profiling claims made in Counts One and Five, and it denies the Motion as to the state constitutional claims made in Counts Three and Seven.

**SO ORDERED**.

Dated at New Haven, Connecticut, this 15th day of June 2015.

                                          /s/ Janet C. Hall
                                          Janet C. Hall
                                          United States District Judge